# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NAPOLEON T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV478 |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Napoleon T., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Commissioner's

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute for Leland C. Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brief)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 486-90), alleging a disability onset date of March 27, 2009 (see Tr. 486, 489).  Upon denial of that application initially (Tr. 177-85, 219-22) and on reconsideration (Tr. 186-94, 230-33), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 234-35). Plaintiff, his non-attorney representative, and a vocational expert ("VE") attended the hearing.  (Tr. 153-76.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 195-212.)  The Appeals Council granted Plaintiff's request for review (Tr. 213-18), finding that "post hearing evidence [located at transcript pages 827 to 876] was never proffered to [Plaintiff] and his representative per regulations, and none of the exceptions to proffer appl[ied]" (Tr. 215 (internal parenthetical citation omitted)).

The ALJ convened a second hearing, attended by Plaintiff, his attorney, and a new VE (Tr. 101-38), and the ALJ again determined that Plaintiff did not meet the Act's requirements for disability (Tr. 75-97).  The Appeals Council thereafter denied Plaintiff's

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

2

request for review (Tr. 1-7, 13-74, 477-79, 625), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the . . . Act on June 30, 2018.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of March 27, 2009, through his date last insured of June 30, 2018.

. . .

3. Through the date last insured, [Plaintiff] had the following severe impairments: degenerative disc disease, depressive disorder, anxiety disorder, and posttraumatic stress disorder.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except he can sit, stand and walk up to 6 hours each; can frequently reach, handle, finger and feel; frequently balance, stoop, kneel and crouch; he can have no exposure to workplace hazards such as unprotected heights, dangerous machinery or ladders, ropes or scaffolds; he can have no exposure to loud noise levels; he is limited to simple, routine tasks and making simple, work-related decisions, not at production pace; he can interact frequently with supervisors and coworkers, only occasionally with the public; and he can adapt to occasional changes in the workplace setting.

3

.  .  .

6.  Through  the  date  last  insured,  [Plaintiff]  was
unable to perform any past relevant work.

.  .  .

10.  Through  the  date  last  insured,  considering
[Plaintiff]'s  age,  education,  work  experience,  and
residual  functional  capacity,  there  were  jobs  that
existed in significant numbers in the national economy
that [Plaintiff] could have performed.

.  .  .

11.  [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from March 27, 2009, the
alleged onset date, through June 30, 2018, the date last
insured.

(Tr.  81-90  (bold  font  and  internal  parenthetical  citations

omitted).)

## II.  DISCUSSION

Federal  law  "authorizes  judicial  review  of  the  Social  Security

Commissioner's  denial  of  social  security  benefits."  Hines  v.

Barnhart,  453  F.3d  559,  561  (4th  Cir.  2006).  However,  "the  scope

of . . . review of [such a] decision . . . is extremely limited."

Frady v. Harris,  646  F.2d  143,  144  (4th  Cir.  1981).  Plaintiff  has

not established entitlement to relief under the extremely limited

review standard.

## A.  Standard of Review

"[C]ourts  are  not  to  try  [a  Social  Security]  case  de  novo."

Oppenheim v. Finch,  495  F.2d  396,  397  (4th  Cir.  1974).  Instead,  "a

4

reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether

5

[the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]   "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." <u>Id.</u> at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  <u>Id.</u> at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[6]

---

[5]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)."  <u>Hines</u>, 453 F.3d at 562-63.

[6]  A claimant thus can qualify as disabled via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to explain what the term 'production pace' meant in the RFC assessment" (Docket Entry 11 at 5 (bold font and block formatting omitted));

2) "[t]he ALJ erred by failing to evaluate the medical opinion of Dr. [Audrey E.] Michal" (<u>id.</u> at 6 (bold font and block formatting omitted)); and

3) "[t]he ALJ erred by failing to apply the correct legal standard when evaluating [Plaintiff]'s psychological impairments" (<u>id.</u> at 11 (bold font and block formatting omitted)).

The Commissioner contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 13 at 4-21.)

### 1. Meaning of Phrase Production Pace in RFC

Plaintiff's first assignment of error maintains that "[t]he ALJ erred by failing to explain what the term 'production pace' meant in the RFC assessment."  (Docket Entry 11 at 5 (bold font and block formatting omitted).)  In particular, Plaintiff notes that "the [United States Court of Appeals for the] Fourth Circuit held that the term 'nonproduction pace' is impermissibly vague."  (<u>Id.</u> (quoting <u>Thomas v. Berryhill</u>, 916 F.3d 307, 312 (4th Cir. 2019)).)

---

F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

In Plaintiff's view, "at face value, the term seems to indicate that the individual neither needs to work at a set pace nor does he need to produce a set amount of work product" (id.) and therefore "the individual could be engaging in a sheltered, non-competitive (and thus non-substantial gainful activity) job" (id. at 5-6 (citing 20 C.F.R. § 404.1573(c))). According to Plaintiff, "[t]his error was particularly harmful given the testimony and evidence in the record detailing how [Plaintiff]'s [post-traumatic stress disorder ('PTSD')] impairs his ability to persist at tasks, remember instructions, and take directions from supervisors." (Id. at 6 (citing Tr. 120-26, 743-47).) Plaintiff requests "remand[] for further proceedings so that the ALJ can define th[e] term [production pace] and thereby explain for how long and under what circumstances [Plaintiff] must be able to sustain his pace to persist at work activities." (Id.) Plaintiff's contentions miss the mark.

To begin, the VE here did not express <u>any</u> difficulty in understanding the meaning of the words "production pace" in responding to the ALJ's dispositive hypothetical question (<u>see</u> Tr. 131-32),[7] and provided three jobs that fit within the ALJ's

_____

[7] Significantly, the definition of "light work" in the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") includes the words "production rate pace":

> [A] job should be rated [l]ight [w]ork . . . when the job requires working at a <u>production rate pace</u> entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a <u>production rate pace</u>, especially in an industrial

10

non-production restriction (see Tr. 132).[8]  Thereafter, despite Plaintiff's assertion in this Court that the ALJ failed to sufficiently define "'production pace'" (Docket Entry 11 at 5 (quoting Tr. 83)), Plaintiff (through counsel) failed to cross-examine the VE regarding the meaning of that non-production restriction, or how the three jobs the VE cited adhered to that restriction, despite questioning the VE on several other topics (see Tr. 135-37).  As a result, Plaintiff has forfeited, in this Court, his challenge under Thomas to the sufficiency of the ALJ's non-production restriction.  See Coyier v. Saul, Civ. No. 20-1899, 2021 WL 2173425, at *2 (7th Cir. May 27, 2021) (unpublished) (holding that the plaintiff "waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates"); Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.");

_____

setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, App'x C ("Components of the Definition Trailer"), § IV ("Physical Demands - Strength Rating"), 1991 WL 688702 (G.P.O. 4th ed. 1991) (emphasis added).

[8] The VE testified that an individual with the limitations reflected in the ALJ's RFC could perform the light, unskilled jobs of "call- out clerk" (DOT, No. 209.667-014 ("Order Caller"), 1991 WL 671807), "marker" (DOT, No. 209.587-034 ("Marker"), 1991 WL 671802), and "router" (DOT, No. 222.587-038 ("Router"), 1991 WL 672123) (Tr. 132), and Plaintiff has failed to make any argument that those jobs require activities that exceed his capabilities, particularly as to the pace of work (see Docket Entry 11).

11

Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (finding that the claimant's failure to raise issue before ALJ "waived [the claim] from being raised on appeal"); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (deeming issue on judicial review waived where the plaintiff "failed to mount any opposition . . . to the view that he retained the capacity to do the [jobs proffered by the VE], despite . . . the opportunity . . . to question the VE about . . . those positions"), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J); Stepinski v. Astrue, No. CA 11-183, 2012 WL 3866678, at *9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing regarding the omission about which he now complains. Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive[ ] . . . [and] finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), recommendation adopted, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished); Young v. United States Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (unpublished) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts . . ., and then present that conflict as reversible error, when the conflict

12

was not deemed sufficient to merit adversarial development in the administrative hearing.").

Second, even if Plaintiff had not forfeited his right to raise this issue on review, it still fails on its merits. Contrary to Plaintiff's assertion that, "in *Thomas*, the Fourth Circuit held that the term 'nonproduction pace' is impermissibly vague" (Docket Entry 11 at 5 (quoting <u>Thomas</u>, 916 F.3d at 312)), that case actually found that the ALJ's preclusion of "work requiring a <u>production rate or demand pace</u>[ ] did not give [the court] enough information to understand what those terms mean," <u>Thomas</u>, 916 F.3d at 312 (emphasis added) (internal quotation marks omitted). Shortly thereafter, the Fourth Circuit found fault with "the ALJ's reference to a '<u>non-production oriented work setting</u>,'" as the Fourth Circuit "d[id] not know what the ALJ intended when she used that phrase," making it "difficult, if not impossible, to evaluate whether restricting [the plaintiff] to a '<u>non-production oriented work setting</u>' properly accounted for [his] well-documented limitations in concentration, persistence, and pace." <u>Perry v. Berryhill</u>, 765 F. App'x 869, 872 (4th Cir. 2019) (emphasis added). Thus, neither <u>Thomas</u> nor <u>Perry</u> "held that the term 'nonproduction pace' is impermissibly vague" (Docket Entry 11 at 5).

Significantly, the Fourth Circuit has affirmed cases with RFCs limiting claimants to work at a <u>non-production pace</u>, <u>see, e.g.</u>, <u>King v. Berryhill</u>, No. 3:18CV1, 2019 WL 1317732, at *2 (W.D.N.C.

Mar. 22, 2019) (unpublished) ("non-production pace"), <u>aff'd sub</u> <u>nom.</u> <u>King v. Saul</u>, 787 F. App'x 170 (4th Cir. 2019); <u>Michaels v.</u> <u>Colvin</u>, No. 3:15CV388, 2016 WL 8710975, at *1, 7 (W.D.N.C. Mar. 25, 2016) (unpublished) ("nonproduction pace rates"), <u>aff'd sub nom.</u> <u>Michaels v. Berryhill</u>, 697 F. App'x 223 (4th Cir. 2017). Moreover, <u>Thomas</u> and <u>Perry</u> "did not create a categorical rule that failing to define certain terms constitutes a reversible error," <u>Taylor v.</u> <u>Saul</u>, No. 3:19CV468, 2020 WL 4340536, at *6 (E.D. Va. July 27, 2020) (unpublished), but, rather, "clarified that a reviewing court's ability to understand phrases such as 'production rate o[r] pace' in an ALJ's opinion depends on the phrase's context and use," <u>Katherine M. A. v. Saul</u>, No. 3:19CV649, 2021 WL 1207739, at *10 (E.D. Va. Feb. 2, 2021) (unpublished), <u>recommendation adopted</u>, 2021 WL 1206799 (E.D. Va. Mar. 30, 2021) (unpublished).

As another judge of this Court reasoned:

In [<u>Perry</u>], the Fourth Circuit specifically distinguished its decision in <u>Sizemore v. Berryhill</u>, 878 F.3d 72 (4th Cir. 2017), where it "found that an ALJ had adequately explained a[n RFC] assessment that restricted the claimant, in part, to '<u>non-production jobs</u>,'" as "the ALJ in <u>Sizemore</u> provided additional context, explaining that the claimant could perform work only in a '<u>low stress'</u> <u>setting, without any 'fast-paced work' or 'public</u> <u>contact</u>,'" to account for moderate limitations in [concentration, persistence, or pace]," which "<u>descriptors helped to explain the restriction intended</u> <u>by the ALJ</u>, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations." <u>Perry</u>, [765 F. App'x at 872] n.1. As in <u>Sizemore</u>, and unlike in <u>Perry</u>, the ALJ here provided the necessary 'descriptors,' limiting [the p]laintiff to '<u>a low stress, low production environment</u>

14

> with no rigid quota and occasional exposure to people.'
> Accordingly, <u>Perry</u> does not justify remand in this
> action.

<u>Ross v. Berryhill</u>, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. Mar. 29, 2019) (unpublished) (Schroeder, C.J.) (emphasis added) (internal parenthetical citation omitted).

As in <u>Ross</u> (and consistent with <u>Sizemore</u>, as construed in <u>Perry</u>), the ALJ here provided the additional descriptors "simple, routine tasks," "simple, work-related decisions," "[frequent interaction] with supervisors and coworkers," "[occasional interaction] with the public," and "occasional changes in the workplace setting." (Tr. 83.) Those descriptors "help[] to explain the restriction intended by the ALJ." <u>Perry</u>, 765 F. App'x at 872 n.1.

In light of the foregoing analysis, Plaintiff's first assignment of error does not warrant relief.

## 2. Opinions of Dr. Michal

Next, Plaintiff contends that "[t]he ALJ erred by failing to evaluate the medical opinion of Dr. Michal." (Docket Entry 11 at 6 (bold font and block formatting omitted).) More specifically, Plaintiff maintains that, "[o]n October 22, 2019, Dr. [] Michal[ ] completed a questionnaire for [Plaintiff]'s Department of Veterans Affairs ('VA') disability claim in conjunction with his [Compensation and Pension ('C&P')] evaluation" (<u>id.</u> at 6-7 (citing Tr. 743-47)), and "opined that [Plaintiff] ha[d] a valid diagnosis

15

of PTSD which cause[d] occupational and social impairment with reduced reliability and productivity" (id. at 7 (citing Tr. 743)), as well as "difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances" (id. (citing Tr. 746)). Plaintiff additionally notes that Dr. Michal reported that Plaintiff "ha[d] recurrent, involuntary, and intrusive distressing memories of [a traumatic] event," "markedly diminished interest or participation in significant activities," "feelings of detachment or estrangement from others," "irritable behavior," "angry outbursts, hypervigilance, [] sleep disturbance," "mild memory loss," "disturbances of motivation and mood, and obsessional rituals which interfere with routine activities." (Id. (citing Tr. 745-46).) Plaintiff argues that, "[d]espite the substance of Dr. Michal's opinion, . . . the ALJ never addresse[d] this opinion **at all** in the decision." (Id. at 8 (emphasis supplied by Plaintiff).) According to Plaintiff, because the ALJ failed "to articulate how persuasive he found [Dr. Michal's] opinion based upon the regulatory factors[,] . . . this case must be remanded for further proceedings so that a fact finder can evaluate and assess the persuasiveness of this opinion 'in the first instance.'" (Id. at 11 (quoting Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013)).) Plaintiff's assertions fail to establish a basis for remand.

For benefits claims filed on or after March 27, 2017, such as Plaintiff's (see Tr. 486-90), the SSA amended 20 C.F.R. § 404.1504 (providing that "a determination made by another agency that [a claimant is] disabled . . . is not binding on [the SSA]") and rescinded Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *6-7 (Aug. 9, 2006) ("SSR 06-03p") (instructing that "evidence of a disability decision by another governmental . . . agency cannot be ignored and must be considered," and that "the [ALJ] should explain the consideration given to these decisions in the notice of decision" (emphasis added)). See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017). The new regulation provides as follows:

> Other governmental agencies . . . — such as the [VA] . . . — make disability . . . [and] employability . . . decisions for their own programs using their own rules. Because a decision by any other governmental agency . . . about whether [a claimant is] disabled . . . [or] employable . . . is based on its rules, it is not binding on [the SSA] and is not [the SSA's] decision about whether [a claimant is] disabled . . . under [the SSA's] rules. Therefore, . . . [the SSA] will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency . . . about whether [a claimant is] disabled . . . [or] employable . . . .

17

> However, [the SSA] will consider all of the supporting
> evidence underlying the other governmental
> agency['s] . . . decision that [the SSA] receive[s] as
> evidence in [a claimant's] claim in accordance with
> § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (emphasis added); see also 20 C.F.R. § 404.1520b(c) (characterizing "[d]ecisions by other governmental agencies" as "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled . . . under the Act"). In turn, subsections (a)(1) through (4) of Section 404.1513 classify different types of evidence as "[o]bjective medical evidence," 20 C.F.R. § 404.1513(a)(1), "[m]edical opinion[s]," id., § 404.1513(a)(2), "[o]ther medical evidence," id., § 404.1513(a)(3), and "[e]vidence from nonmedical sources," id., § 404.1513(a)(4).

The regulations applicable to claims filed on or after March 27, 2017, such as Plaintiff's (see Tr. 486-90), define a "[m]edical opinion," in relevant part, as follows:

> [A] statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations or restrictions in . . . :
>
> . . .
>
> [his] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]

18

20 C.F.R. § 404.1513(a)(2) (emphasis added). Significantly, the new regulations narrowed the definition of "[m]edical opinions" by removing "statements . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis" from that definition, compare 20 C.F.R. § 404.1527(a)(1) (applicable to claims filed before Mar. 27, 2017) (emphasis added)), with 20 C.F.R. § 404.1513(a)(2) (applicable to claims filed on or after Mar. 27, 2017), and reclassifying such judgments as "[o]ther medical evidence," 20 C.F.R. § 404.1513(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [his] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." (emphasis added)).[9]

---

[9] The new regulations define "[o]bjective medical evidence" as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1502(f), 404.1513(a)(1). "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated. 20 C.F.R. § 404.1502(g) (emphasis added). "Laboratory findings means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests. 20 C.F.R. § 404.1502(c) (emphasis added). Notably, the objective medical evidence in Dr. Michal's C&P examination report (under the heading "Behavioral Observations") reflects largely normal findings - Dr. Michal described Plaintiff as "alert, oriented, appropriately dressed and groomed, . . . [and] friendly and cooperative," with "mildly anxious"

19

The ALJ here noted that "[Plaintiff] is rated as disabled by the VA, but the VA uses different criteria, and the VA rating does not establish any specific functional limitations [(Tr. 872-75)]." (Tr. 86.) The ALJ thus concluded that, "[w]hile probative of [Plaintiff]'s limitations pursuant to VA standards, this rating and any associated opinions are of limited persuasive value." (Id.) Applying the above-quoted regulatory provisions, the VA's disability rating decision regarding Plaintiff (see Tr. 480-85 (partial copy of 4/1/20 decision granting Plaintiff "individual unemployability . . . effective September 3, 2019," increasing Plaintiff's intervertebral disc syndrome rating from 10% to 40% "effective January 27, 2020," and continuing Plaintiff's PTSD rating at 70% and lower extremity lumbosacral radiculopathy rating at 20%); see also Tr. 872-75 (reflecting Plaintiff's total service-connected rating at 90%)) qualified as "inherently neither valuable nor persuasive," 20 C.F.R. § 404.1520b(c), and the ALJ labored under no obligation to "provide any analysis about how [h]e considered [that] evidence," id.; see also 20 C.F.R. § 404.1504. Accordingly, the ALJ's assignment of "limited persuasive value" to that VA rating (Tr. 86) constitutes harmless error, as the ALJ need not have assigned any degree of persuasiveness to the rating, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)

---

mood, "animated" affect, and "[n]o current suicidal thinking." (Tr. 746.)

(observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

With regard to Dr. Michal's C&P examination report, Section 404.1504 did require the ALJ to "consider" that evidence pursuant to subsections (a)(1) through (4) of Section 404.1513, 20 C.F.R. § 404.1504, because it underlay the VA's disability rating decision (see Tr. 743 (PTSD portion of C&P examination report containing heading "Initial [PTSD] Disability Benefits Questionnaire Internal VA or [Department of Defense] Use Only" (emphasis added) (asterisks omitted))). As quoted above, the ALJ deemed "th[e VA's] rating and any associated opinions [] of limited persuasive value" (Tr. 86 (emphasis added)), but the ALJ failed to specify whether he intended "any associated opinions" (id.) to include Dr. Michal's statements on the C&P examination report (see id.). Nevertheless, the ALJ did cite to findings in Dr. Michal's C&P examination report twice in his decision (see Tr. 82 (citing Tr. 744, 746)), and also discussed the mental health treatment Plaintiff received at the VA (see Tr. 85-86), which Dr. Michal reviewed in completing the C&P examination report (see Tr. 743 (reflecting that Dr. Michal "reviewed" Plaintiff's "VA e-folder" and the "[Computerized Patient Record System ('CPRS')]" in completing PTSD C&P examination report)). For the reasons that follow, because Dr. Michal's

21

statements on the C&P examination report relied on by Plaintiff do not constitute "[m]edical opinions" under Section 404.1513(a)(2) requiring a persuasiveness analysis, but, rather, "[o]ther medical evidence" under Section 404.1513(a)(3) and "[e]vidence from nonmedical sources" under Section 404.1513(a)(4), the ALJ's "consider[ation]" of that evidence sufficed under the regulations, 20 C.F.R. § 404.1504.

Plaintiff first points to Dr. Michal's "valid diagnosis of PTSD which cause[d] occupational and social impairment with reduced reliability and productivity" as a medical opinion the ALJ failed to discuss. (Docket Entry 11 at 7 (citing Tr. 743).) As an initial matter, Dr. Michal's PTSD diagnosis does not constitute a "[m]edical opinion" under Section 404.1513(a)(2), but, rather, "[o]ther medical evidence" under the applicable regulations, <u>see</u> 20 C.F.R. § 404.1513(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including . . . <u>diagnosis</u> . . . ." (emphasis added)); <u>see also</u> <u>Stephanie B. v. Kijakazi</u>, No. 5:20CV60, 2022 WL 909038, at *9-10 (W.D. Va. Mar. 28, 2022) (unpublished) (concluding that "[psychiatrist's] statements about [the plaintiff]'s psychiatric diagnoses . . . w[as] '[o]ther medical evidence[]' that [the] ALJ [] was not required to evaluate under [the regulations governing medical opinions]" (citation omitted)). Thus, the ALJ

did not err by failing to assess the persuasiveness of Dr. Michal's PTSD diagnosis.

A closer question presents as to whether Dr. Michal's statement that Plaintiff's PTSD caused "occupational and social impairment with reduced reliability and productivity" (Tr. 743) constitutes a "[m]edical opinion," 20 C.F.R. § 404.1513(a)(2). Although another district court in the Fourth Circuit has found a C&P examiner's finding of "<u>total</u> occupational and social impairment" a medical opinion (as well as one reserved to the Commissioner and thus inherently neither valuable nor persuasive under 20 C.F.R. § 404.1520b), <u>see</u> <u>Gerald v. Kijakazi</u>, No. 6:20CV3446, 2021 WL 8014692, at *9 (D.S.C. Oct. 27, 2021) (unpublished) (emphasis added), <u>recommendation adopted sub nom.</u> <u>Milton G. v. Kijakazi</u>, 2022 WL 669626 (D.S.C. Mar. 7, 2022) (unpublished), here, the degree of "impairment" in occupational and social functioning and "reduc[tion]" in reliability and productivity remains <u>unquantified</u> and <u>vague</u>, and the statement does not provide <u>any specific functional limitations</u> in work-related mental abilities (Tr. 743).

Under such circumstances, doubt exists that such a statement constitutes a "[m]edical opinion" under Section 404.1513(a)(2). <u>See</u> <u>Kaylynn L. B. v. O'Malley</u>, No. 22CV519, 2024 WL 964441, at *5 (N.D. Okla. Mar. 6, 2024) (unpublished) ("[The consultative psychological examiner's] state[ment] that [the p]laintiff's

23

'ability to tolerate normal stress appears somewhat
limited[]' . . . is simply <u>too vague and too unmoored from work
activities</u> for th[e c]ourt to find it meets the definition of a
medical opinion." (emphasis added)); <u>Justin F. v. Commissioner of
Soc. Sec.</u>, No. 1:21CV966, 2023 WL 6958780, at *5 (W.D.N.Y. Oct. 20,
2023) (unpublished) (deeming C&P psychiatrist's "report [] other
medical evidence and not a medical opinion[,]" because "[t]he
statements by [the psychiatrist] in the final narrative part of the
[C&P] form were <u>vague</u>, using the term 'major impairment' and
'could' repeatedly to describe abilities and limitations" (emphasis
added)); <u>Hyma v. Kijakazi</u>, No. 8:21CV2848, 2023 WL 5707869, at *5
(M.D. Fla. June 30, 2023) (unpublished) ("[The consultative
psychological examiner]'s mere observations that the plaintiff's
attention, concentration, and adaptability appeared poor, his
ability to learn new material appeared limited, and that [he] did
not appear able to relate and act appropriately with others or deal
with stress, are properly characterized as <u>vague</u> and inform little
about their impact on the plaintiff's ability to meet mental work
demands, or what the plaintiff can still do despite [his]
impairment(s). Therefore, they do not meet the regulatory criteria
of a medical opinion." (emphasis added) (internal quotation marks
omitted)); <u>Mathews v. Kijakazi</u>, No. CV 21-1140, 2022 WL 4535087, at
*1 n.2 (W.D. Pa. Sept. 28, 2022) (unpublished) ("[The plaintiff's
VA social worker] identified [the p]laintiff's symptoms of PTSD,

24

noted — generally — that [his] symptoms affected concentration and interaction, and noted further that [his] condition might affect stress tolerance.  However, [the social worker] did not opine <u>any specific limitations or restrictions</u> of [the p]laintiff's ability to perform mental demands of work activities . . . .  Thus, the [c]ourt finds that [the social worker's] <u>non-specific</u> references to concentration, interactions, and stress are too <u>vague</u> to transform her letter into a medical opinion, and the ALJ did not harmfully error [sic] in failing to treat it like one.") (internal quotation marks omitted) (emphasis added)); <u>Ronald S. v. Commissioner of Soc. Sec.</u>, No. 1:20CV1688, 2022 WL 3716568, at *16 (W.D.N.Y. Aug. 29, 2022) (unpublished) (holding that "[VA psychologist's] findings [on C&P examination report] were stated in <u>vague, conclusory</u> terms that <u>failed to provide any functional limitations</u> beyond noting that [the p]laintiff had an impairment, and therefore, were of little use" and "were not medical opinions under the regulations" (emphasis added)); <u>Gerald</u>, 2021 WL 8014692, at *10 ("[A]lthough [the C&P psychologist] notes that the plaintiff had a hard time with word finding, [the psychologist] does not opine <u>specific limitations</u> relating to those behavioral observations.  An evaluation of an individual that does not include a <u>work-related limitation</u> or that <u>lacks specificity</u> regarding the limitations is not a medical opinion."); <u>Scott L. v. Saul</u>, No. 2:20CV177, 2021 WL 1574451, at *3 (D. Me. Apr. 21, 2021) (holding that statement by

25

C&P psychologist that the plaintiff's "PTSD caused 'occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks[]'" did not constitute "'medical opinion,'" because it did not address "'what [the plaintiff] can still do despite [his] impairments'"), <u>recommendation adopted</u>, 2021 WL 3234592 (D. Me. July 29, 2021) (unpublished).

Moreover, even if Dr. Michal's finding of "occupational and social impairment with reduced reliability and productivity" (Tr. 743) constituted a "[m]edical opinion" under Section 404.1513(a)(2), the ALJ found Plaintiff's PTSD a severe impairment at step two of the SEP (<u>see</u> Tr. 81) and accounted for findings of <u>moderate</u> deficits in social interaction, concentration, persistence, or pace, and adaptation (<u>see</u> Tr. 82) by including limitations on interaction with supervisors, co-workers, and the public, as well as restrictions to non-production work, simple, routine tasks, simple, work-related decisions, and occasional changes, in the RFC (<u>see</u> Tr. 83). Plaintiff has not shown how even the ALJ's fully crediting Dr. Michal's finding of "occupational and social impairment with reduced reliability and productivity" (Tr. 743) would have compelled the ALJ to adopt greater (let alone work preclusive) mental limitations in the RFC (<u>see</u> Docket Entry 11). Such failure precludes relief on that front. <u>See</u> <u>Kaylynn L. B.</u>, 2024 WL 964441, at *5 (finding that, "even if [consultative psychological examiner] stated a stress-related medical opinion[, ]

26

and even if the ALJ found th[at] opinion persuasive[,]" the plaintiff had not shown that RFC limitations including "understanding, remembering, and carrying out simple and detailed, but not complex, tasks; the ability to adapt to occasional changes in work processes and environment; no production rate pace but the ability to perform end of the day goals; and the ability to tolerate occasional interaction with coworkers, supervisors, and the general public" failed to "adequately account[] for [the examiner]'s finding that [the p]laintiff was somewhat limited in her ability to tolerate normal stress" (internal quotation marks omitted)).

Plaintiff next notes that Dr. Michal indicated that Plaintiff suffered from "difficulty in establishing and maintaining effective work and social relationships, [] difficulty in adapting to stressful circumstances, including work or work-like settings," "recurrent, involuntary, and intrusive distressing memories of [a traumatic] event," "markedly diminished interest or participation in significant activities," "feelings of detachment or estrangement from others," "irritable behavior," "angry outbursts, hypervigilance, [] sleep disturbance," "mild memory loss," "disturbances of motivation and mood, and obsessional rituals which interfere with routine activities." (Docket Entry 11 at 7 (citing Tr. 745-46).) According to Plaintiff, the VE testified "that off-task time amounting to just 10% of the workday[,] . . . missing

27

more than one day of work a month[,] . . . unscheduled breaks[,] . . . [and] an inability to respond appropriately to criticism from supervisors" would preclude "competitive employment." (Id. at 8 (citing Tr. 134-37).) Thus, Plaintiff argues, "Dr. Michal's opinion . . . would result in disabling limitations." (Id.)

Plaintiff's arguments fail because, as discussed above, the amended regulations redefined a "[m]edical opinion" to no longer include a listing or description of a claimant's symptoms by a medical source. 20 C.F.R. § 404.1513(a)(2). Moreover, those regulations did not reclassify statements about symptoms as "[o]ther medical evidence," id., § 404.1513(a)(3) (including "judgments about the nature and severity of [a claimant's] impairments, [his] medial history, clinical findings, diagnosis, treatment prescribed with response, or prognosis"), "because . . . symptoms are 'subjective statements made by [a claimant], not by a medical source,'" Shawna Ann J. v. Commissioner of Soc. Sec., No. 1:19CV1098, 2021 WL 733804, at *5 (W.D.N.Y. Feb. 25, 2021) (unpublished) (emphasis added) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5850)). Thus, Dr. Michal's checked list of PTSD symptoms, based on Plaintiff's subjective statements, would qualify only as "[e]vidence from nonmedical sources" under Section 404.1513(a)(4). See 20 C.F.R. § 404.1513(a)(4) ("Evidence from nonmedical sources

28

is any information or statement(s) from a nonmedical source (<u>including [a claimant]</u>) about any issue in the [] claim." (emphasis added)); <u>see also</u> <u>Miranda R. A. v. Kijakazi</u>, No. 20CV453, 2022 WL 3137424, at *2 (N.D. Okla. July 5, 2022) (unpublished) (finding physician's statements regarding the plaintiff's symptoms "constitute[d] . . . evidence from nonmedical sources, not medical opinions"), <u>recommendation adopted</u>, 2022 WL 3104832 (N.D. Okla. Aug. 3, 2022) (unpublished). Accordingly, the ALJ did not err by failing to analyze the persuasiveness of Dr. Michal's list of PTSD symptoms. <u>See</u> <u>Shawna Ann J.</u>, 2021 WL 733804, at *5 "[T]he section of the [C&P examination] form containing a list of Plaintiff's diagnostic criteria and symptoms supportive of a diagnosis of PTSD is not a medical opinion . . . ."); <u>see also</u> <u>Gerard</u>, 2021 WL 8014692, at *10 (finding that "majority of the items identified by the plaintiff [that the ALJ failed to analyze] are under the subheading of 'symptoms' [on C&P form] and do not describe the plaintiff's ability to engage in the demands of work activities").

Plaintiff insists that "district courts in the Fourth Circuit have already ruled" in support of his contention that Dr. Michal's statements on the C&P report constitute medical opinions. (Docket Entry 11 at 10 (citing <u>Easterbrook v. Kijakazi</u>, 88 F.4th 502, 514 (4th Cir. 2023), <u>Barnes v. Kijakazi</u>, No. 5:20CV97, slip op., at 5-6 (E.D.N.C. Sept. 28, 2021), and <u>Rivera v. Saul</u>, No. 5:19CV390, 2020 WL 4723170, at *5 (E.D.N.C. June 25, 2020) (unpublished),

recommendation adopted, 2020 WL 4718382 (E.D.N.C. Aug. 12, 2020) (unpublished)).) Those cases, however, do not aid Plaintiff's cause.

Rivera does not support Plaintiff's contentions, because, despite adjudicating a benefits claim filed on or after March 27, 2017, see Rivera, 2020 WL 4723170, at *3, that case mistakenly applied and relied upon the pre-March 27, 2017, definition of "[m]edical opinion[]," which included judgments about the nature and severity of impairments, symptoms, and diagnoses within that definition:

> [The Commissioner] contends that the ALJ was not required to evaluate the persuasiveness of [the C&P examiners'] PTSD reviews because they are not medical opinions. . . . "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527. The three evaluations at issue here are medical opinions. In addition to the check-box portions of [the examiners'] review[s] indicating [the plaintiff]'s symptoms and mental restrictions, [the examiners'] opinion[s] contain[] diagnoses of PTSD and major depression as well as prose indicating [the plaintiff]'s social, occupational, educational, and mental health history.

Id. at *5 (emphasis added). Barnes similarly applied the pre-March 27, 2017, version of the regulatory definition of "'[m]edical opinion[],'" Barnes, No. 5:20CV97, slip op., at 6, and merely held that "the check-box format [of a disability form for the North Carolina Division of Motor Vehicles] . . . may provide a reason for

30

discounting the opinion, [but] does not in itself preclude qualification as a medical opinion[,]" id. at 6 n.2. In Easterbrook, the Fourth Circuit faulted an ALJ's decision to discount a treating physician's opinions in part because the physician "merely checked off boxes on a form and did not provide a narrative report containing specific clinical findings to support all the extreme limitations[,]" because the physician had actually "provided notations in the margins relevant to [the plaintiff]'s condition" and "submitted a narrative letter . . . that provided details about [the plaintiff], her condition, her prior treatment, the current scope of her disability, and [the physician's] prognosis for [the plaintiff]'s condition" and thus found that "[the physician]'s opinions offered far more than a cursory review of [the plaintiff]'s condition." Easterbrook, 88 F.4th at 514 (internal quotation marks omitted). Thus, Easterbrook neither held that an ALJ errs merely by discounting a check-box medical opinion as lacking an explanatory narrative, nor analyzed the amended definition of "[m]edical opinion" under Section 404.1513(a)(2), see id.. Notably, the ALJ here did not discount Dr. Michal's statements on the C&P form because they occurred in checkbox form (see Tr. 86).[10]

---

[10] Plaintiff additionally asserts that "[t]he Fourth Circuit, in an unpublished decision, recently affirmed that the [SSA] is still responsible for evaluating the evidence underlying the VA rating, including the C&P opinions." (Docket Entry 11 at 10-11 (citing Stephen R. v. O'Malley, No. 21-2292, 2024 WL

As Dr. Michal's statements on the C&P examination report constitute "[o]ther medical evidence" under Section 404.1513(a)(3) and "[e]vidence from nonmedical sources" under Section 404.1513(a)(4), the ALJ fulfilled his duty under the regulations by considering such evidence (see Tr. 82, 85-86). See 20 C.F.R. § 404.1504 ("[The SSA] will consider all of the supporting evidence underlying the [VA]'s decision that [the SSA] receive[s] as evidence . . . ." (emphasis added)). The regulations required nothing more of the ALJ. See Justin F., 2023 WL 6958780, at *4 ("While the ALJ did not explicitly reference by name the [VA psychiatrist's] opined limitations in the narrative conclusion of the [C&P] report, [the ALJ] did identify and discuss the VA C&P report. . . . Further, in addition to the [C&P] report, [the] ALJ [] discussed the [] medical records and therapy examination findings from the VA providers which [the psychiatrist] reviewed and relied upon for his [C&P] report. . . . [The] ALJ [] properly considered the evidence underlying the C&P examination and report[.]" (emphasis added)); Kelly R. v. Commissioner, Soc. Sec. Admin., No. 1:21CV222, 2022 WL 16707091, at *6 (N.D. Ga. Sept. 28,

3508155, at *5 (4th Cir. July 23, 2024) (unpublished)).) Plaintiff's reliance on Stephen R. misses the mark, as that case merely reaffirms that ALJs "must 'consider all of the supporting evidence underlying' a [VA] decision[,]" Stephen R., 2024 WL 3508155, at *5 (quoting 20 C.F.R. § 404.1504) (emphasis added), which the ALJ did in this case, as explained above. Moreover, that case ruled that "nothing in the applicable regulations requires medical sources to conduct [an] assessment [of the claimant's limitations and capacities] on a function-by-function basis[,]" id. (citing 20 C.F.R. § 404.1513(a)(2)), but the ALJ here did not discredit Dr. Michal's statements because they failed to assess Plaintiff's limitations on a function-by-function basis (see Tr. 86).

2022) (unpublished) (deeming advanced practice clinician's statement "too vague and speculative to constitute a medical opinion or to support specific functional limitations[]" and thus "constitutes 'other medical evidence,' which the ALJ was only required to <u>consider</u>" (emphasis added)).

In short, Plaintiff's second issue on review falls short.

### 3. Reliance on Objective Medical Evidence to Assess Mental Impairments

Lastly, Plaintiff asserts that "[t]he ALJ erred by failing to apply the correct legal standard when evaluating [Plaintiff]'s psychological impairments." (Docket Entry 11 at 11 (bold font and block formatting omitted).) In that regard, Plaintiff maintains that "[t]he most significant error made by the ALJ in evaluating [Plaintiff]'s psychological conditions is [the ALJ's] reliance on 'normal' or 'benign' objective medical evidence to discredit [Plaintiff]'s subjective complaints." (<u>Id.</u> at 12.) Plaintiff points out that, "when summarizing the medical evidence, the ALJ . . . specifically quotes benign mental status examinations from the relevant time period" (<u>id.</u> (citing Tr. 85-86)), and "then goes on to note that, even after [Plaintiff's date last insured], [his] 'mental status examination findings were unremarkable'" (<u>id.</u> (quoting Tr. 86)). According to Plaintiff, the Fourth Circuit has "'h[eld] that ALJs may not rely on objective medical evidence (or the lack thereof) - **even as just one of multiple factors** - to

33

discount a claimant's subjective complaints regarding symptoms of fibromyalgia *or some other disease that does not produce such evidence*'" (id. (quoting Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 97 (4th Cir. 2020)) (emphasis added by Plaintiff))), and then "explicitly extended the *Arakas* reasoning to include psychological disorders, depression in particular" (id. at 13 (citing Shelley C. v. Commissioner of Soc. Sec., 61 F.4th 341, 361-62 (4th Cir. 2023)); see also id. (quoting Shelley C., 61 F.4th at 361 ("In *Arakas*, we held that ALJs could not rely upon the absence of objective medical evidence to discredit 'a claimant's subjective complaints regarding symptoms of fibromyalgia *or some other disease that does not produce such evidence*.' 983 F.3d at 97 (emphasis added). Today we hold that depression - particularly chronic depression - is one of those other diseases.")))). Accordingly, Plaintiff contends that "it was error for the ALJ to increase [Plaintiff's] burden of proof by applying an incorrect legal standard[ and t]hus, this matter should be remanded for application of the correct legal standard and additional explanation from the ALJ." (Id. at 14.) Those assertions fail to carry the day.

In Arakas, the Fourth Circuit deemed fibromyalgia a "unique" disease, Arakas, 983 F.3d at 97, with "symptoms [that] are entirely subjective," id. at 96, and noted that "physical examinations of patients with fibromyalgia will usually yield normal results — a

34

full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions," id. (brackets omitted). The Fourth Circuit thus held that "ALJs may not rely on objective medical evidence (or the lack thereof) – even as just one of multiple medical factors – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia," because "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease," id. at 97 (emphasis added).

Just over two years later, the Fourth Circuit issued Shelley C., in which the court extended the above-described holding in Arakas to depression, reasoning as follows:

> After acknowledging that [the plaintiff]'s medically determinable impairment could reasonably be expected to cause some of the alleged symptoms, the ALJ determined that [the plaintiff]'s statements relating to the intensity, persistence, and limiting effect of her symptoms were inconsistent with the medical and other evidence in the record. We hold that the ALJ erred in discounting [the plaintiff]'s subjective complaints as inconsistent with the record's medical evidence.

> The ALJ's legal error is clear: he could not dismiss [the plaintiff]'s subjective complaints based *entirely* upon the belief that they were not corroborated by the record's medical evidence. The Fourth Circuit has long held that "while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Indeed, "[b]ecause pain is not readily susceptible of objective proof . . ., the absence of objective medical evidence of the intensity, severity,

35

degree or functional effect of pain is not determinative." *Hines v. Barnhart*, 453 F.3d 559, 564–65 (4th Cir. 2006). Accordingly, [the plaintiff] was entitled to rely entirely on subjective evidence to demonstrate that her pain was sufficiently persistent and severe to support a disability finding. *See id.* at 564. As described in length above, the record contains no shortage of such evidence.

. . .

In *Arakas*, we held that ALJs could not rely upon the absence of objective medical evidence to discredit "a claimant's subjective complaints regarding symptoms of fibromyalgia *or some other disease that does not produce such evidence*." 983 F.3d at 97 (emphasis added). Today, we hold that depression — particularly chronic depression — is one of those other diseases. . . . Stated differently, symptoms of [major depressive disorder ('MDD')], like those of fibromyalgia, are "*entirely subjective*," determined on a case-by-case basis. *Arakas*, 983 F.3d at 96 (emphasis added). Ultimately, because of the unique and subjective nature of MDD, subjective statements from claimants "should be treated as evidence *substantiating* the claimant's impairment." *Id.* at 97–98.

Because the ALJ "improperly increased [the plaintiff]'s burden of proof," *id.* at 96, in requiring that her subjective statements be validated by objective medical support, we must find error.

Shelley C., 61 F.4th at 360–62 (italics in original) (internal quotation marks, footnote, and some citations omitted). As the following discussion shows, Plaintiff's argument under Arakas and Shelley C. fails to establish a basis for remand.

In contrast to the ALJ in Shelley C., the ALJ here neither relied "entirely" on objective medical evidence to discount Plaintiff's mental symptoms, Shelley C., 61 F.4th at 360 (emphasis omitted), nor "requir[ed]" that objective medical evidence

36

substantiate those symptoms, id. at 362. Rather, the ALJ found that Plaintiff's subjective statements about his mental symptoms lacked consistency with "the medical evidence and other evidence in the record" (Tr. 84 (emphasis added)), and "medical evidence" and "other evidence" encompass more than just objective medical evidence, see 20 C.F.R. § 404.1513(a) (defining different types of evidence, including "[o]bjective medical evidence," "[o]ther medical evidence," "[m]edical opinions," "[e]vidence from nonmedical sources." and "[p]rior administrative medical finding[s]").

Consistent with that finding, the ALJ discussed Plaintiff's mental health treatment during the relevant period from March 27, 2009, to June 30, 2018, as follows:

> As for [Plaintiff's] mental impairments, there is even less evidence from the relevant period [than evidence relating to Plaintiff's physical impairments]. On May 27, 2009, [he] presented for a mental health consult ([Tr. 688]). He reported symptoms of PTSD, including nightmares, flashbacks, intrusive thoughts, hypervigilance, exaggerated startle response, sleep disturbance, and avoidance behaviors ([id.]).

(Tr. 85 (emphasis added).) The ALJ did not mention, much less expressly rely on, normal mental status examination findings in discussing that visit. (See id.) The ALJ thereafter discussed some of the mental health evidence post-dating Plaintiff's date last insured of June 30, 2018, again without discussing any objective findings on mental status examinations:

37

> On April 30, 2019, [Plaintiff] presented to [the] WG
> Hefner Salisbury VAMC.  [(Tr. 1263).]  The session
> addressed his current challenges with PTSD symptoms.  He
> reported challenges with his daily life.  He was
> diagnosed with . . . [MDD] and PTSD.  On April 30, 2020,
> [he] was seen at WG Hefner Salisbury VAMC for
> psychotherapy.  [(Tr. 768.)]  He stated th[at] his mood
> and PTSD symptoms had been up and down.  He attributed
> his symptoms to [the] Covid pandemic.  [(Tr. 769.)]  He
> was noted to suffer from PTSD[ and]
> depression . . . .  [(Tr. 763.)]

(Tr. 85 (emphasis added) (some internal citations omitted).)  The
ALJ then quoted verbatim and without any commentary a mental status
examination from April 12, 2023, nearly five years after
Plaintiff's date last insured, which, as emphasized below,
contained both normal and abnormal findings:

> Mental Status Exam: Orientation: Alert, oriented to
> person, place and time General Motor: Ambulating without
> assistance Appearance: appropriately groomed dressed and
> nourished no apparent distress Speech: clear normal rate
> rhythm tone - not pressured Mood: anxious and depressed
> Affect congruent with mood Thought process: coherent
> relevant logical and goal-directed Suicidal ideations:
> Denied Homicidal Ideations: Denied Hallucinations: Denied
> Delusions: None Insight: intact Judgment: Good
> Intelligence: average

(Id. (quoting Tr. 1353) (underscoring added) (italics omitted).)
The ALJ concluded his analysis of Plaintiff's mental health
treatment with the following statements regarding Plaintiff's
treatment with a social worker in March and April 12, 2022, nearly
four years after the date last insured:

> After the date last insured, [Plaintiff] participated in
> an Integrative Health program, and he worked with a
> social worker ([Tr. 848-57]).  Mental status examination
> findings were unremarkable ([Tr. 849-50, 853]).  He is

38

not suicidal ([Tr. 850, 853]).  <u>He enjoys reading books,</u>
<u>listening to music, and playing with his son</u> ([Tr. 854]).
Nothing in the record suggests that [Plaintiff] cannot
perform simple tasks and make simple judgments in a
stable work environment with limited social demands.

(Tr. 86 (emphasis added).)

As the above-quoted analysis makes clear, the ALJ neither
relied "entirely" on objective medical evidence to discount
Plaintiff's subjective complaints of disabling mental symptoms,
<u>Shelley C.</u>, 61 F.4th at 360 (emphasis omitted), nor "required" that
Plaintiff produce such evidence to substantiate his subjective
complaints, <u>id.</u> at 362.  Instead, the ALJ discussed Plaintiff's 1)
lack of mental health treatment in the record during the relevant
period (<u>see</u> Tr. 85), 2) ability to engage in a wide variety of
daily activities (<u>see</u> Tr. 86 (listing "reading books, listening to
music, and playing with his son"); <u>see also</u> Tr. 84 (noting
"independen[ce] in [Plaintiff's] activities of daily living,"
"light housework," and "an intense home exercising plan, including
planks, martial arts, and boxing"), 85 (describing "walk[ing],
shop[ping], cook[ing] and clean[ing]," as well as "physical
training such as performing planks and boxing")), and 3) reports of

39

varying degrees of mental symptoms (see Tr. 85).[11]  <u>Arakas</u> and <u>Shelley C.</u> do not preclude the ALJ from such considerations.

As well-explained by another district court in this Circuit:

Here, the ALJ found [the p]laintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but concluded that [the p]laintiff's statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the <u>medical evidence and other evidence in the record</u>.  The ALJ here did not base his conclusion on a lack of objective medical evidence. Rather, the <u>ALJ explicitly noted that his [] conclusion was based on inconsistencies with the medical evidence and other evidence in the record</u>.  The ALJ properly weighed [the p]laintiff's subjective complaints against other evidence in the record.  For instance, the ALJ compared [the p]laintiff's hearing testimony to her <u>previous statements, including those made during medical visits</u> with her primary care provider and her statements regarding her <u>activities of daily living</u>, including her ability to care for dependent grandchildren and live alone.  <u>Such weighing remains permissible under <i>Shelley C.</i> and <i>Arakas</i></u>.

---

[11] The record does not contain <u>any</u> opinion evidence regarding Plaintiff's mental functioning during the relevant period.  Dr. Michal's statements on the C&P examination report not only post-dated Plaintiff's date last insured by over 15 months (see Tr. 743) but, as discussed above, did not constitute "[m]edical opinions" under the regulations, 20 C.F.R. § 404.1513(a)(2).  Furthermore, the state agency psychological consultants both found insufficient evidence during the relevant period to rate the degree of impairment of Plaintiff's mental disorders.  (See Tr. 182-83, 191-92.)  Notably, the consultants observed that the record contained evidence of Plaintiff's participation in mental health consultations and group therapy from August 2017 to June 11, 2018, just prior to the date last insured of June 30, 2018, but that "no records[ or mental status examinations were] provided within [the] records received."  (Tr. 182, 192; see also Tr. 638-42 (reflecting dates of Plaintiff's group therapy and mental health consultations between Aug. 2017 and June 2018), 673-74 (VA medical records lacking the treatment notes corresponding to those treatment dates).)  Thus, the ALJ apparently accorded Plaintiff's subjective statements regarding his mental symptoms the benefit of the doubt and 1) found Plaintiff's depressive disorder, anxiety disorder, and PTSD severe impairments at step two of the SEP (see Tr. 81), 2) included multiple limitations in the RFC to account for the impact of those impairments (see Tr. 83), and 3) deemed "of no particular value" the state agency psychological consultants' administrative findings of insufficient evidence (Tr. 86).

Lasharne W. v. Commissioner, Soc. Sec. Admin., No. CV 21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) (unpublished) (emphasis added) (internal quotation marks and citations omitted); see also Anthony P. v. O'Malley, No. 1:22CV291, 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024) (unpublished) ("[T]he ALJ in this case did not dismiss [the p]laintiff's subjective complaints based entirely upon the belief that they were not corroborated by the medical evidence; nor did the ALJ require that [the p]laintiff's subjective statements be validated by objective medical support. Rather, in assessing [the p]laintiff's subjective complaints, the ALJ considered [the p]laintiff's ability to complete a myriad of daily activities, [his] own statements about his condition, and [his] treating provider's observations of [the p]laintiff's functioning. Fourth Circuit precedent does not suggest that ALJs should ignore objective evidence such as this; instead, Shelley C. and Arakas prevent ALJs from requiring claimants to provide medical evidence that would be impossible to produce given their specific medical conditions. The ALJ weighed the [p]laintiff's subjective complaints appropriately under those holdings and did not impose undue demands." (emphasis added)); Shelby D. v. Kijakazi, No. 3:22CV234, 2023 WL 6444895, at *11 (S.D.W. Va. Sept. 29, 2023) (unpublished) ("[A] diagnosis of . . . depression does not render a claimant per se disabled. . . . The ALJ expressly stated that his conclusions were not based exclusively on objective medical

41

findings, but included consideration of the <u>total medical and nonmedical evidence</u>, including testimony and statements by [the plaintiff] and others, a function report, and other record evidence regarding [his] <u>activities of daily living</u>, behavior and habits." (emphasis added) (internal quotation marks omitted)).

In sum, because "the ALJ here did not 'effectively require[ ]' objective evidence or offer objective medical evidence as the 'chief' or 'definitive' reason to discount the intensity of [Plaintiff]'s [subjective] complaints," <u>Shelby D.</u>, 2023 WL 6444895, at *12 (quoting <u>Arakas</u>, 983 F.3d at 97), the undersigned will deny relief on Plaintiff's third and final assignment of error.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

    /s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 19, 2025